

**Signed and Filed: June 29, 2010**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>MARGE E. HEALY,<br>                      Debtor.<br>_____<br>MARGE E. HEALY,<br>                      Plaintiff,<br>v.<br>UNITED STATES DEPARTMENT OF<br>EDUCATION, EDUCATIONAL CREDIT<br>MANAGEMENT CORPORATION, JFK<br>UNIVERSITY, and E.C.S.I.,<br>                      Defendants. | Bankruptcy Case<br>No. 05-34722DM<br><br>Chapter 7<br><br>Adversary Proceeding<br>No. 09-3033DM |

MEMORANDUM DECISION FOLLOWING TRIAL TO
DETERMINE DISCHARGEABILITY OF STUDENT LOAN

I.  INTRODUCTION

On May 3, 2010, the court conducted a trial on the complaint of plaintiff Marge E. Healy ("Healy") against defendant Educational Credit Management Corporation ("ECMC"). Healy appeared and was represented by Cheryl C. Rouse, Esq. and Norman P. Bahlert, Esq., her attorneys; ECMC appeared and was represented by Miriam Hiser, Esq., its attorney.

For the reasons discussed below, the court concludes that Healy is not entitled to discharge her debt to ECMC.

-1-

## II. FACTS[1]

Healy owes ECMC, the present holder of loans (the "ECMC loans"), at least $141,534.92. The ECMC loans are educational loans that are subject to a test for dischargeability under 11 U.S.C. § 523(a)(8), which presumes that such educational loans are nondischargeable unless the debtor can demonstrate that the payment would be an undue hardship.

Healy is almost seventy-four years old. She incurred ECMC loans between June, 1990 and July, 1993; the principal amount originally loaned was $45,749.

During 1996 and 1997, Healy paid approximately $1,700 on account of the ECMC loans and more recently suffered a wage garnishment in the amount of $677.70 and a social security offset of $229.80 applied to the same loans. She also paid $854.61 in respect of other educational loans not held by ECMC.

She made no voluntary payments on account of the ECMC loans after 1997 and she filed Chapter 7 in this court on October 14, 2005. This adversary proceeding was commenced nearly 3-1/2 years later, on February 23, 2009.

For the years 2007, 2008 and 2009, Healy's adjusted gross income ("AGI") reported on her federal tax returns was $15,789, $17,201 and $32,027, respectively. The increase in her income for 2009 is largely attributed to a nine month temporary employment situation (through March 28, 2010) wherein she was able to earn just under $20 an hour and worked thirty-five hours a week, compared to $14.50 an hour for shorter work weeks in other periods

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

while working on an "on-call" situation.  Healy expects that her AGI for 2010 will approximate the amount she reported in 2007 and 2008.

After filing her Chapter 7 bankruptcy in 2005, Healy incurred debt on four credit cards.  She presently owes $7,512 on them and budgets monthly payments on those four debts totaling $340.  The record does not reflect what Healy used the post-petition credit card advances for, but the court presumes they were for Healy's routine living expenses or perhaps in connection with a small business activity that she has operated at a loss for the last few years.

ECMC argues that Healy should avail herself of either the Income Contingent Repayment Program ("ICRP") or a more favorable Income Based Repayment Program ("IBR").  Based upon Healy's AGI for 2007 and 2008, her ICRP payments would be just under $103 and IBR payments would be $10; for the 2009 AGI, her ICRP payment would be $353.28 and her IBR payment would be $197.28.

III.  DISCUSSION

The parties have throughly briefed, and are quite familiar with the Ninth Circuit's requirements set forth in the United Student Aid Funds, Inc. v. Pena, (In re Pena) 155 F.3d 1108 (9th Cir. 1998), namely that a debtor seeking to discharge an educational loan under section 523(a)(8) must establish that she cannot maintain a minimum standard of living, based on current income and expenses, if forced to repay the loan; that additional circumstances exist such that the state of affairs is likely to persist; and that she has made a good faith effort to repay the loan.  All three elements of the Pena test must be proven.

Healy has established without serious debate that she has satisfied the second prong of Pena based upon her age, her deteriorating health, and a dismal prognosis for increased income in the future. Unfortunately for Healy, the availability of the IBR convinces the court that she has not satisfied the first prong of the Pena test because, based upon her current income and expenses, she would be able to make the IBR payments on her debt to ECMC.

The court reaches this conclusion by declining to take into account the $340 per month Healy is obligated to pay the issuers of four post-petition credit cards. The court agrees with the decision of the bankruptcy court in the Zygarewicz case (Case No. 05-31918-a-7 Bankr. (E.D. Cal.)), filed January 15, 2010, namely that given such a long period of time between Healy's petition date and the date of this adversary proceeding, the post-petition credit card debt may not be considered. Rather, the circumstances of the debtor's financial affairs must be taken into on or about the time of entry of discharge. Applying that court's reasoning, to allow events that have occurred many years later would amount to a "perpetual license to discharge student loan debts based on events that occurred years after the bankruptcy discharge is granted."

Healy's strongest argument about avoiding the IBR is that her 2009 AGI will force her into an impossible situation of requiring payments of as much as $197.28. Her prior recent employment history and likely future employment situation (AGI below $20,000) will result in an IBR payment of $10.

Assuming that Healy could enroll in the IBR immediately and

-4-

thus would be required to submit her 2009 AGI as a starting point, her current income and expenses suggest that $197.28 might be too onerous.  But that over states the problem and ignores reality. First, Healy must go through several steps.  As set forth in ECMC's post-trial brief, the ECMC loans, at present being in a default situation, are not eligible for IBR.  First Healy must consolidate her loans through the William D. Ford Federal Direct Loan Program.  After that she can elect a repayment program under the IBR.

Healy has not explained how long that will take and ECMC's counsel has pointed out in her post-trial brief that the process was explained in a letter of November 9, 2009, that is not in evidence.  The court presumes that if Healy were to proceed to consolidate through the Ford Program and then apply for IBR, by the time she became fully qualified under IBR she would either be obligated to pay the $197.28 figure for no more than two or three months and then, upon submission of her 2010 federal tax return with the expected lower AGI, she would qualify for a considerable lower payment.[2]

From the foregoing the Court concludes that with Healy's current and projected income, while modest, and her expenses, while not unreasonable (except for the credit cards payments), she could make the extremely small payments under IBR.  Thus on the record presented, Healy has not satisfied the first prong of

---

[2] If necessary, the court would consider staying the effectiveness of the judgment of non-dischargeability in favor of ECMC until the end of 2010.

Pena.[3]

Because the first prong of Pena has not been satisfied, the court need not decide the third prong although Healy's failure to make any payments for over twelve years, and her failure to consider the IBR, do suggest the good faith standard of Pena might not have been satisfied.[4]

Finally, the court is mindful of the fact that Healy's counsel has argued that even if she is able to live an additional twenty-five years (certainly not within any reasonable actuarial expectancy) and fully performs under the twenty-five year term of the IBR, she will be saddled with either the remaining debt, or some sort of a speculative tax on debt forgiveness that she will carry to her grave. The court accepts ECMC's argument that such an outcome is highly speculative and not determinative of the outcome reached here.

IV. CONCLUSION

Counsel for ECMC should submit a form of judgment declaring the ECMC debt nondischargeable for the reasons stated in this Memorandum Decision. Before doing so, counsel for both sides

---

[3] The court appreciates Healy's counsel's argument about the reality that no matter what program Healy participates in, she will never, ever pay down any of the principal on the ECMC loans. While a novel argument, the law requires the court to consider whether payments can be made, not how those payments will be applied by ECMC.

[4] In making the foregoing point, the court does not attribute to Healy any bad faith. In fact, the court is sympathetic to her plight. The "bad faith" test in Pena is a legal term that simply applies under these circumstances.

-6-

should meet and confer about a consensual form of judgment that stays the effectiveness of the judgment until January, 2011.

**END OF MEMORANDUM DECISION**